UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL JOHNSON,

     Plaintiff,

v.                                      Case No. 3:21cv1428-LC-HTC

CORRECTIONS OFFICER M.C. MCFALL, et. al.,

     Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Michael Johnson's *pro se* second amended complaint under 42 U.S.C. § 1983. ECF Doc. 12. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).

Upon screening the second amended complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and for the reasons set forth herein, the undersigned finds the second amended complaint sufficient to be served on Defendant Officer McFall, in his individual capacity and *only* as to the Eighth Amendment claim. Thus, Plaintiff will be directed to provide the Court with one service copy of the second amended complaint. The Court, *however,* respectfully recommends all claims

against Warden Clemmons and Assistant Warden J. Santiago as well as the retaliation and official capacity claims against McFall be dismissed for failure to state a claim upon which relief can be granted. Moreover, the undersigned recommends dismissal of all claims for injunctive and declaratory relief be dismissed.

## I.    BACKGROUND

Plaintiff, an inmate currently incarcerated at Florida State Prison, originally brought this action against five (5) defendants: Officer M.C. McFall, Officer Jacobson, W. Santiago, M.D., Assistant Warden J. Santiago, and Warden Clemmons. ECF Doc. 1. Plaintiff's allegations arise from an incident in which he was allegedly raped by his cellmate after being denied transfer to a different cell while he was incarcerated at Santa Rosa Correctional Institution ("Santa Rosa CI"). ECF Doc. 1. Plaintiff alleged Eighth Amendment failure to protect claims against Officer McFall, Officer Jacobson, and Dr. Santiago. He alleged a retaliation claim against Warden Santiago and, although he identified Warden Clemmons as a defendant, he alleged no facts against the Warden.

The undersigned screened Plaintiff's amended complaint,[1] ECF Doc. 4, and found it to be deficient for several reasons, including failing to state a claim against

---

[1] Although Plaintiff has once amended his complaint, it was simply to use this Court's required forms and was not a substantive amendment. ECF Doc. 1, 3.

all Defendants other than Officer McFall. ECF Doc. 7. The Court issued a 22-page order detailing these deficiencies, including setting out the standard for alleging a First Amendment retaliation claim and a supervisory liability claim, and gave Plaintiff an opportunity to substantively amend his complaint. *Id*.

## II.    PLAINTIFF'S SECOND AMENDED COMPLAINT

In the second amended complaint, Plaintiff seeks to bring Eighth Amendment and First Amendment claims against Officer McFall, Assistant Warden Santiago, and Warden Clemmons in both their official and individual capacities. ECF Doc. 12 at 7, 16. He omits Officer Jacobson and Dr. Santiago as defendants. Thus, the clerk will be directed to terminate those defendants. The following facts are taken from Plaintiff's second amended complaint and are accepted as true for the purposes of this Report.[2]

Plaintiff shared a cell in B-Dorm with fellow inmate, Zackarah Foust. ECF Doc. 12 at 5. Inmate Foust entered Plaintiff's cell around October 2019. *Id*. After a few weeks of sharing a cell, Foust began to "make gay advances towards [Plaintiff]." *Id*. Plaintiff "made it known to Correctional Officer, Defendant McFall "that Foust was sexually assaulting [Plaintiff] for the first time late November, early December." *Id*. Defendant McFall replied to Plaintiff "you know the rules f*ck or

---

[2] The citations throughout refer to the page number of the document on the docket, not the page number on Plaintiff's second amended complaint.

fight." *Id*. "A second time, after waking up and finding himself . . . in bad shape," Plaintiff complained to McFall citing the Prison Rape Elimination Act ("PREA"). ECF Doc. 12 at 5. McFall, responded to Plaintiff: "use the phone, that's what button (8) eight is for, why you telling me." *Id*. "Plaintiff Johnson feels the disregard and breach of prison regulations by McFall, caused Foust to become mad resent [sic] and drug and rape [Plaintiff] on January 2, 2020." *Id*.

"[W]hile Plaintiff slept, Foust blew '(K2) smoke' in Plaintiff's face" causing Plaintiff "to have a seizure" and, at such time, "Foust raped [Plaintiff]." *Id*. The next morning after the rape, Plaintiff got hold of "Foust's homemade weapon (razor)," and "asked Foust to leave the room." ECF Doc. 12 at 6. Plaintiff hid it "out of sight" and "at no time during [Plaintiff] asking Foust to leave did he make any threats" or "brandish" a weapon. *Id*. "Foust started kicking the door and got the attention of Officer Jacobson." *Id*. Foust told Officer Jacobson "he wanted to be moved." *Id*. Officer Jacobson "left and returned with [Defendant McFall]." *Id*. Officer McFall "took one look at [Plaintiff] and Foust and already knew, and said 'no, no. I told yall I'm not moving yall." *Id*. Plaintiff, "sitting on the top bunk the whole time, jumped down crying and told McFall Foust had been raping him against his will, McFall became mad and walked away without a ward [sic]." *Id*.

Defendant "McFall returned later to remove Foust but refused [Plaintiff's] PREA and wrote Plaintiff a [Disciplinary Report ("DR")] in retaliation and also as

a means of punishment for Plaintiff's PREA request and pleas for help, and made light jokes of [Plaintiff] saying 'I'm a man of God' (*See* Exhibit B)."  ECF Doc. 12 at 6.  "Badly beaten and injured from the sexual assault and in fear from threats and being labeled a snitch, Plaintiff waited and prayed for help."  *Id*.  "After days of being refused help, Plaintiff was able to tell Officer Smith of the abuse and rape and being refused PREA."  *Id*.  On January 7, 2020, "Officer Smith after talking to four (4) witnesses . . . left promising to get Plaintiff the help he needed."  *Id*. at 15.

On the night of January 7, 2020, "[Plaintiff] was pulled out [of his] cell, an O.I.C and Sgt, taken in a room, assaulted with fist, threats and walkie talkies, [Plaintiff] was told to pull his PREA, and write a different statement."  *Id*.  "[Plaintiff] agreed to change his statement, because fear of harm and being charged with any type of crime and make it to the safety of his cell."  *Id*.  "Once [Plaintiff] made it to his cell and the safety of cameras and audio, [Plaintiff] refused to change his statement, the OIC became upset and can be heard making threats and demanding [Plaintiff] to change his statement via audio, which [Plaintiff] refused all demands."  *Id*.  "O.I.C. left and returned with medical that same knight [sic], [Plaintiff] went in a room with O.I.C. and medical and explained to them that he had been drugged and raped."  *Id*.  "Medical staff and O.I.C. made jokes and kicked Plaintiff out, and sent

Plaintiff back to his cell, with no help at all refusing to give Plaintiff a proper check for rape."[3]  *Id.*

Plaintiff "immediately wrote an emergency grievance to the Secretary of Florida Department of Corrections," which was approved (*See* Exhibit A and C)." ECF Doc. 12 at 14.  "Defendant J. Santiago, who is the Assistant Warden received numerous grievances, to please do something about the abuse to inmates from officers and inmates when trying to get out the cell from a roommate that does not have the same sexual preference, and while under the color of law refused to take heed of the warnings from Plaintiff and other inmates of the possibility of a harmful situation (*See* grievance, marked Exhibit D), Hernandez Williams grievance to Asst. Warden foretold told [sic] and talked to the threat to the safety of inmates when being housed with gay or nongay inmates and the actions of security officers at SRCI." *Id.*

"Later these same officers under J. Santiago, who is all times relevant to this case, made inmate Hernandez beat me while [Plaintiff] was in cuffs."  Plaintiff wrote many grievances which were returned or mishandled.  "J. Santiago and Warden (sic) of my fears and all was overlooked." *Id.*  "Plaintiff was transferred to a much harder prison and subjected to treatment and conditions that are atypical and significant

---

[3] Despite these allegations, Plaintiff has not alleged any claims against the OIG or any medical professionals; thus, these facts are not relevant to this Report.

hardship in punishment for complaining and to keep Plaintiff from getting all the names for filing a thorough lawsuit by Warden, Assistant Warden and McFall, who is at all time relevant to this case."

As relief, Plaintiff requests (1) the Court enter a judgment granting Plaintiff a declaration that the acts and omission described herein violated his rights under the constitution and laws of the United States; (2) a permanent and preliminary injunction ordering an investigation into statements made herein on all defendants change of protocol were religion and gay are non-gay inmates are not forced to live together stating compitibal [sic] and training; (3) compensatory damages in the amount of $73,000 against each defendant jointly and severally; (4) punitive damages in the amount of $74,000 against each defendant; (5) to be shipped back to SRCI;  (6) charges pressed on Foust for rape; (7) help with mind, body, soul by doctors; (8) jury trial on all issued triable by jury; (9) any additional relief this court deems just proper and equitable.  ECF Doc. 12 at 18, 16.  Plaintiff also attaches Exhibit A, Exhibit C, and an Exhibit D[4] which are grievances and a response.  *Id*. at 19-21.

---

[4] Plaintiff did not attach an Exhibit B.

## III.  STANDARD OF REVIEW

Because Plaintiff is a prisoner and is also proceeding *in forma pauperis,* the Court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a plausible claim for relief, plaintiffs must go beyond merely pleading the sheer possibility of unlawful activity by a defendant; plaintiffs must offer factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  Additionally, because Plaintiff is proceeding *pro se*, the undersigned will liberally construe his allegations.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## IV. SUPERVISORY LIABILITY CLAIMS AGAINST WARDEN CLEMMONS AND ASSISTANT WARDEN J. SANTIAGO

Plaintiff's claims against Assistant Warden Santiago and Warden Clemmons (collectively referred to herein as the "Wardens") appear to be two-fold. First, he alleges he wrote many grievances to them which were returned or mishandled. Plaintiff, however, cannot state a claim for relief based on that allegation because it is well settled that "[w]here a state actor's role is limited to the denial of administrative grievances, or the failure to act with respect to such grievances, such state actors are not liable under § 1983 on the theory that their actions constituted an acquiescence with respect to the alleged unconstitutional conduct." *See e.g., Jackson v. Fla. State Hosp.*, 2020 WL 5239116, at *2 (N.D. Fla. June 26, 2020) (quoting *Denslinger v. Wall*, 2009 WL 437490, at *3 (M.D. Tenn. Feb. 20, 2009)), *report and recommendation adopted*, 2020 WL 5237519 (N.D. Fla. Sept. 2, 2020).

Second, Plaintiff alleges the Wardens are "responsible for the operations and welfare of all inmates," and were negligent in failing to do something about the "abuse to inmates . . . when trying to get out the cell from a roommate that does not have the same sexual preference" and failing to " "take heed of the warnings" of the "possibility of a harmful situation" created by housing a gay inmate with a non-gay inmate. ECF Doc. 12 at 6. These allegations, however, even when accepted as true also fail to state a claim on which relief can be granted.

As the Court informed Plaintiff in its deficiency order, ECF Doc. 7, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "[T]he standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (citation and internal quotation marks omitted).

As an initial matter, Plaintiff's second amended complaint is devoid of any allegation showing the Wardens personally participated in violating Plaintiff's constitutional rights. There are no allegations the Wardens were aware Foust and Plaintiff were housed together; what their sexual orientations were; or that Foust had made sexual advances or threats toward Plaintiff *before* the alleged rape occurred. *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks omitted) (alterations adopted) (A prison official violates the Eighth

Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk.").

Plaintiff also has not alleged facts sufficient to establish a causal connection between the Wardens' conduct and McFall's failure to remove Foust from his cell. A plaintiff can establish a causal connection by alleging that: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Williams v. Santana*, 340 F. App'x 614, 617 (11th Cir. 2009) (citing *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). Without a causal connection, liability cannot be imposed on supervisors simply because they were put on notice through the grievance process of an alleged constitutional violation and failed to correct it. *See Charriez v. Garcia,* No. 4:11CV379-SPM/CAS, 2012 WL 7808096, at *4 (N.D. Fla. Oct. 31, 2012)*, report and recommendation adopted,* No. 4:11CV379-SPM/CAS, 2013 WL 1248250 (N.D. Fla. Mar. 26, 2013), *aff'd sub nom. Charriez v. Sec'y, Fla. Dep't of Corr.,* 596 F. App'x 890 (11th Cir. 2015).

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration,

rather than isolated occurrences." *Santana*, 340 F. App'x at 617 (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). "Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied." *Owens v. Leavins*, 2006 WL 2640275, *4 (N.D. Fla. Sept. 13, 2006) (citations omitted). Isolated incidents and conclusory allegations, however, are all Plaintiff has alleged in the second amended complaint.

For example, while alleging Asst. Warden Santiago "showed negligence by failing to adequately protect Plaintiff, reasonably answer Plaintiff's and other inmates' grievances and complaints concerning staff, rape, gays and nongays, inmates celling, drugs, and weapons," ECF Doc. 12 at 16, Plaintiff provides only one example of such prior grievance, aside from his own – a grievance from inmate Hernandez Williams sent to the Assistant Warden in 2019. ECF Doc. 12 at 14.

In Hernandez's grievance he complained, generally, about being housed with a non-gay inmate. There is, however, no indication Hernandez's fear was based on any specific threat or was anything more than speculative.[5] Hernandez complained that being "a gay inmate who not all inmates accept as roommate," puts him at a

---

[5] Plaintiff also includes an allegation about some unknown officials "under J. Santiago" making Hernandez beat Plaintiff up. The undersigned cannot make sense of this allegation, however, or how it possibly relates to Plaintiff's claims in this action regarding Foust.

potential risk for violence by non-gay inmates. *Id.* Indeed, Hernandez did not take issue with being placed in a cell with a non-gay inmate, but, instead, with not having "a chance to view the inmate already in the cell" or "interview[]" . . . "or ask[] if the inmate in the cell was a threat. . ." ECF Doc. 12 at 20. That grievance falls short of establishing widespread abuse arising from non-gay inmates housed with gay inmates or of assaults by officers against inmates seeking to be moved.

Regardless, even if the Court were to consider Hernandez's grievance as being a second incident involving a gay and non-gay inmate, two incidents are also not sufficient to show "widespread abuse." *See Wakefield v. City of Pembroke Pines*, 269 Fed. App'x 936, 940 (11th Cir. 2008) ("Two incidents, occurring approximately thirteen months apart, are insufficient to establish a custom"); *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (finding two instances of sexual harassment prior to the plaintiff's sexual assault insufficient to put supervisor on notice of an ongoing constitutional violation); *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) ("[A] few isolated instances ... will not suffice.").

Plaintiff's allegations against Warden Clemmons are even barer than those against Santiago. Plaintiff alleges the Warden is negligent for "failing to reasonably answer mine and others administrative complaints of safety and the [easy access] of drugs and weapons at [SRCI]." ECF Doc. 12 at 17. Plaintiff, however, identifies

no other alleged administrative complaints or grievances.  Moreover, the grievance he attaches to the complaint for himself is one that he wrote in January 2020, *after* Foust's alleged rape had already occurred and, as Plaintiff acknowledges, that grievance was approved.  ECF Doc. 12 at 19-20.

In his prior complaint, Plaintiff included absolutely no factual allegations against the Warden and was told he "must amend his complaint to include *facts* sufficient to support a valid claim."  ECF Doc. 7 at 7 (emphasis added).  Instead of adding any such facts, Plaintiff merely makes conclusory allegations, which "are not entitled to be assumed as true."  *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009); *see Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (citations omitted).

Finally, to the extent Plaintiff takes issue with the Warden's and Assistant Warden's failures to act as being negligent, mere negligence is not sufficient to create a supervisor's liability under § 1983."  *Foster v. Oelrich*, 2006 WL 1699880, *2 (N.D. Fla. June 15, 2006) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *Anderson v. Georgia State Pardons and Parole Bd.*, 165 F. App'x 726, 729 (11th Cir. 2006)).  In fact, even if Plaintiffs were able to show the Wardens were aware that inmates of different sexual orientation were being housed together,

the fact that such conduct occurs is not a constitutional violation.  There are no facts showing that such housing conditions has resulted in widespread violence, inmate on inmate attacks, or officer on inmate assaults.  In other words, there are no facts showing that such conduct, even if commonplace, resulted in a serious risk of harm to him or other inmates.  While "excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment.'"  *See Purcell ex rel. Est. of Morgan v. Toombs Cty., Ga*, 400 F.3d 1313, 1320–21 (11th Cir. 2005), citing *Woodhouse v. Virginia,* 487 F.2d 889, 890 (4th Cir.1973) (citation omitted). A general awareness of possible violence is insufficient to establish liability.  *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003).

Thus, Plaintiff's Eighth Amendment claims against the Wardens should be dismissed for failure to state a claim.

## V.    FIRST AMENDMENT - RETALIATION

In Plaintiff's prior complaint, he attempted to allege a claim of retaliation against Asst. Warden Santiago for transferring him to a harsher prison for complaining and filing grievances.  In the second amended complaint, Plaintiff expands that claim to include Officer McFall and Warden Clemmons.  Plaintiff, however, added no additional facts to show a "causal relationship between the

retaliatory action and the protected speech," which he was told he had to do.  ECF Doc. 7 at 19.

As Plaintiff was told by the Court in the prior order, to state a First Amendment retaliation claim, a plaintiff must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  "[T]o establish a causal connection [between protected speech and retaliatory actions], the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Keeton v. Anderson–Wiley*, 664 F.3d 865, 878 (11th Cir. 2011) (quoting *Castle v. Appalachian Technical College*, 631 F.3d 1194, 1197 (11th Cir. 2011)).

Nowhere in Plaintiff's complaint does he provide any facts to connect his transfer to any grievances he filed or complaints he made.  He also does not allege any facts to show any of the named Defendants were responsible for his transfer.  There are no facts regarding when he was transferred as compared to when his grievances of complaints were made.   Instead, Plaintiff simply concludes he was transferred for filing grievances, complaining, or to prevent him from getting names for this lawsuit. *See Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216, 1231

(N.D. Ala. 2012) (dismissing retaliation claims because plaintiff did not allege any facts showing one defendant had any involvement in the retaliatory conduct and, as to another defendant, merely made a "legal conclusion" that the defendant "retaliated against [the plaintiff] for his speech" without providing any "facts to support a plausible claim that the defendant acted against plaintiff because of his" speech).

Similarly, although Plaintiff also alleges Officer McFall wrote a fake DR and did not let Plaintiff attend a DR hearing "in retaliation and as a means of punishment," ECF Doc. 12 at 6, that allegation is also conclusory. Plaintiff does not include the DR as an exhibit, does not state the result of the DR, does not identify its contents, does not provide facts to show how it was fake, and does not appear to seek any relief related to the DR. Even if Officer McFall made "light jokes" of Plaintiff's reference to being a "Man of God"- the Court cannot reasonably infer from that conduct alone that Officer McFall wrote a DR in retaliation to any protected conduct. *See Iqbal*, 556 U.S. at 678 ((explaining that "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim) (quoting *Twombly*, 550 U.S. at 555, 557)).

Indeed, Plaintiff admits he threatened Foust, who was kicking the door to get Officer Jacobs' attention. Writing a DR under those circumstances is certainly not

uncommon, and Plaintiff has not alleged how writing a DR under those circumstances was retaliatory. Simply because Plaintiff alleges something was done in retaliation, does not make it so. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."); *see Leonard v. Monroe Cty. Fla.,* 789 F. App'x 848, 850-851 (11th Cir. 2019) (determining that complaint "contained no factual allegations that would allow a reasonable inference that a causal connection existed" where "[p]laintiff made only a conclusory assertion that he was [retaliated against] for filing grievances").

Thus, Plaintiff's claim for retaliation as to *all* Defendants should be dismissed. *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

## VI. OFFICIAL CAPACITY CLAIMS

In Plaintiff's prior complaint he did not identify the capacity in which he was suing Defendants. In the instant amended complaint, Plaintiff indicates he is suing Defendants in their individual and official capacities. Plaintiff's official capacity claims against the Defendants, however, are barred by the Eleventh Amendment.

When an official is sued under § 1983 in official capacity, the suit is simply "'another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), (citing *Monell v.*

*Department of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).    Thus, Plaintiff's claims against these Defendants in their official capacities are essentially claims against the FDOC, which is an agency of the State of Florida, and are barred by the Eleventh Amendment.  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state employee in his official capacity is deemed to be a suit against the state for Eleventh Amendment purposes).

Absent an express waiver by the State or a valid congressional override, the Eleventh Amendment bars an action for monetary damages against an official or agency of the State of Florida in federal court.  *See Will*, 491 U.S. at 71 ("The Eleventh Amendment bars [suits against a State] unless the State has waived its immunity . . . ."); *Gamble v. Florida Dept. of Health & Rehab. Services*, 779 F.2d 1509, 1512 (11th Cir. 1986) (holding that the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983").  The State of Florida has not waived its sovereign immunity from §1983 suits.  *See Gamble*, 779 F.2d at 1513-15.

Thus, Plaintiff's claims for monetary relief under § 1983 against Defendants in their official capacities should be dismissed.  Also, as discussed below, although claims for injunctive relief are not barred by the Eleventh Amendment, those claims fail on other grounds.

## VII.  DECLARATORY AND INJUNCTIVE RELIEF

In addition to compensatory and punitive damages, Plaintiff seeks a host of declaratory or injunctive relief, to which he is not entitled and, thus, those claims should also be dismissed.

First, Plaintiff seeks a declaration that the acts of the Defendants violated his constitutional rights.  ECF Doc. 12 at 7.  However, as Chief Judge Timothy thoroughly explained, such a claim "is subject to dismissal for failing to satisfy the 'actual controversy' prerequisite of 28 U.S.C. § 2201."  *See Merritt v. Godfrey*, No. 3:13CV607/LAC/EMT, 2015 WL 5439306, at *10 (N.D. Fla. August 10, 2015)*, report and recommendation adopted,* No. 3:13CV607/LAC/EMT, 2015 WL 5440570 (N.D. Fla. Sept. 19, 2015).  "[A] declaration that Defendants' past conduct violated [Plaintiff]'s constitutional rights 'would [be] nothing more than a gratuitous comment without any force or effect.'"  *Id.*  "Additionally, a claim for declaratory relief is considered to be an official capacity claim against the relevant state entity, and, implicitly, not an individual capacity claim."  *Id.* (internal citations omitted). And, as discussed above, however, Plaintiff has not stated an official capacity claim against any of the Defendants.

Second, Plaintiff requests that Foust get charged with rape and that Defendants be investigated, but the Court does not have authority to direct state officials to initiate prosecution of anyone or conduct a criminal investigation.  *See*

*United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000) (noting "[t]he decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced").

Third, Plaintiff requests a change in protocols at Santa Rosa CI. However, he has been transferred from Santa Rosa CI, making any such declaratory relief moot. *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir.2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). Also, although Plaintiff seeks to be returned to Santa Rosa CI, a prisoner has no right to be at a particular facility, and the decision of where a prisoner should be housed is an administrative matter that does not belong with the Court. *See e.g., Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is acute interest to the States."). Similarly, even if the issue were not moot, requiring a change in protocol at Santa Rosa CI "would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate," which the Court is not inclined to do. *See e.g., Mendoza v. Dixon,* No. 4:20-CV-00214-MW-MAF, 2021 WL 6494945, at *6 (N.D. Fla. Dec. 7, 2021), *report and recommendation adopted sub nom. Mendoza v. Inch*, No. 4:20CV214-MW/MAF, 2022 WL 124165 (N.D. Fla. Jan. 13, 2022) (rejecting request for similar relief to house inmates who are not gay separate from those who are gay, transgender, or bisexual).

Finally, Plaintiff seeks "preliminary" relief and states he "needs help with mind, body, soul by defendants." EF Doc. 12 at 18. These requests are simply too vague to warrant relief. *See D'Amico v. Jones*, 4:18CV494-RH-HTC, ECF Doc. 19 (Aug. 7, 2019), *adopted by* ECF Doc. 21 (denying Plaintiff's motion for preliminary injunction seeking "unspecified prison officials and medical staff to provide him with medical care" as so vague as to fall short of the standard for injunctive relief); *see* Fed. R. Civ. P. 65 (requiring all orders to "state the reasons why it issued; state its terms specifically; and describe in reasonable detail . . . the act or acts sought to be restrained or required").

Thus, all of Plaintiff's claims for declaratory and injunctive relief should be dismissed.

## VIII. CONCLUSION

As stated above, the Court detailed for Plaintiff the deficiencies in Plaintiff's amended complaint in its deficiency order, ECF Doc. 7, requiring a second amended complaint. Despite Plaintiff being given an opportunity to more carefully craft his complaint, Plaintiff's second amended complaint is just as problematic as his first (if not more so). Plaintiff has not cured the deficiencies previously identified, and the undersigned finds a second chance to amend to state a claim for retaliation or a claim against the Warden and Assistant Warden to be futile.

Accordingly, it is ORDERED:

1.     Within **twenty-one (21) days** from the date of this order, Plaintiff shall submit to the Court one (1) service copy of the second amended complaint (ECF Doc. 12), for service on Officer McFall.[6]  The service copy must be identical to the second amended complaint filed with the Court.  This case number should be written on the copy.  Alternatively, Plaintiff may submit a payment to the clerk at $0.50/page (a total $10.50) for the clerk to make a copy of the second amended complaint.

2.     Failure to comply with this order may result in a recommendation of dismissal.

3.     The clerk shall terminate Officer Jacobson and Dr. Santiago as Defendants.

---

[6] Once the copy or payment is received, the Court will enter a separate service order.

It is also respectfully RECOMMENDED that:

1.      Plaintiff's claims against Warden Clemmons and Assistant Warden J. Santiago be DISMISSED WITHOUT PREJUDICE for failure to state a claim and those defendants be terminated from this matter.

2.      Plaintiff's retaliation claim and official capacity claims against Officer McFall be dismissed.

3.      Plaintiff's claims for declaratory and injunctive relief be DISMISSED WITHOUT PREJUDICE for failure to state a claim.

At Pensacola, Florida, this 11th day of April, 2022.

_/s/ Hope Thai Cannon_

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.